IRVING, P.J.,
DISSENTING:
¶23. The majority reverses and remands this case to the Chancery Court of Warren County , because it finds that the chancery court erred in finding no ambiguity in codicil 3 to the last will and testament of J.O. Smith Jr. I agree with the chancellor that codicil 3 is unambiguous. Therefore, I respectfully dissent. Rather than reversing and remanding this case, I would affirm the chancellor’s finding that codicil 3 is unambiguous but would modify the judgment to correct the chancellor’s allocation of the shares of Yazoo River Towing, because I find that the chancellor erred in making the mathematical calculations.
¶ 24. Codicil 3 reads as follows:
J.O. Smith III will receive, in the event of my death 41% of-the shares that I own in Big River Shipbuilders, Inc., Vicksburg Plant Food, Inc, and Yazoo River Towing, Inc.
Patrick Smith and Lela Smith Fowers will receive 39% of the stock that I own in Big River Shipbuilders, Inc., and Vicksburg Plant Food; and 29% of the stock[4] of Yazoo River Towing, Inc., divided equally.
(Emphasis and footnote added). The majority finds ambiguity because the third bequest—that specifies that twenty-nine percent of the stock of Yazoo River Towing is to be divided equally between Patrick and Lela—does hot include the language “that I own” to describe the stock being bequeathed. The majority concludes that the absence of this language in one of the three bequests made in codicil 3 evidences ' a latént ambiguity, because it is *1106 susceptible to two reasonable interpretations: either (1) that Big J.O. intended to convey to Lela and Patrick twenty-nine percent of the stock that he owned in Yazoo River Towing, or (2) that Big'J.O. intended to convey to Lela and Patrick twenty-nine percent of the total stock of Yazoo River Towing. I agree that the bequest is susceptible to two interpretations. However, it is my view that the bequest is susceptible to only one reasonable interpretation—that in codicil 3, Big J.O. was bequeathing—in each bequest—only percentages of the percentage of stock that he owned, not percentages of all the stock of Yazoo River Towing.
¶ 25. The facts indicate-that at the time of Big J.O.’s death, the division of ownership in Yazoo River Towing’s 5,000 outstanding shares was as follows:
[[Image here]]
Big J.O, did not own one hundred percent of the stock of Yazoo River Towing; rather, he owned sixty-nine percent of it. Sixty-nine percent of Yazoo River Towing’s stock equates to 3,483 shares. Thus, Big J.O. could not have intended to bequeath twenty-nine percent of 5,000 shares in Ya-zoo River Towing to Patrick and Lela, because he did not own 5,000 shares. One simply cannot give away what one does not own.
¶26. The chancellor clearly manifested the same belief, as- he maintains throughout his judgment that codicil 3 reflects Big J.O.’s unambiguous intent to leave twenty-nine percent of the stock he owned in Yazoo River Towing to Patrick and Lela:
[Big J.O.] left the stock he owned to his three surviving.children, in the percentages stated. The effect of [Big J.O.’s] bequests of the specified percentages of the stock he omied in Big River Shipbuilders, Inc., Vicksburg Plant Food, Inc. and Yazoo River Towing, Inc. is that a portion of the corporate stock omied by [Big J.O.] passes through the residuary clause of the Will.
The Court has construed Codicil # 3 as written and signed by [Big J.O,] in plain and unambiguous language that he left the corporate stock he owned to each of his three living children in the percentages set forth above.
The Court, giving effect to the plain, clear and simple language in Codicil # 3 to the Last Will and Testament of [Big J.O.], hereby concludes and enters as its Final Judgment that [Big J.O.] left the stock he owned in Big River Shipbuilders, Inc., Vicksburg Plant Food, Inc. and Yazoo River Towing, Inc. to his three surviving children, [Little J.O.], [Patrick,] and [Lela], in the percentages ■stated in Codicil # 3. The effect of [Big J.O.’s] bequests of the specified percentages of the stock he owned in Big River Shipbuilders, Inc., Vicksburg Plant Food, Inc. and Yazoo River Towing, Inc. is that a portion of the corporate stock owned by [Big J.O.J passes through the residuary clause of [Big J.O.’s] Last Will and Testament.
(Emphasis added). Further, the chancellor implies in a footnote of his order that the phrase “that I own” is unnecessary and he would not read it into what Big J.O. wrote, as its absence did not diminish his finding that Big J.O. intended to bequeath twenty-nine percent of the shares he owned to *1107 Patrick and Lela.T agree with the chancellor that Big J.O.’s failure to include this qualifying language in the bequest at issue is hardly a fatal flaw rendering the entire codicil ambiguous.
¶27. Unfortunately, however, the chancellor used the wrong numbers when calculating the amount of shares of Yazoo River Towing to be divided. In footnote one of his judgment, the chancellor states: “Codicil 3 leaves 29% ‘of the stock of Yazoo River Towing to Lela and Patrick, divided equally, or 14.5% of the 5,000 outstanding shares of Yazoo River Towing.” Applying these numbers would result in the following division: -
[[Image here]]
According to this calculation, Big J.O. would be devising forty-one percent— 1,428.03 shares—of his 3,483 shares to Little J.O. and twenty-nine percent—1,450 shares—of the 5,000 outstanding shares to Lela and Patrick, which amounts to each receiving 725 shares. This result is wholly incompatible with the rest of the chancellor’s order, in which he clearly finds that Big J.O. intended to convey forty-one percent of the shares he owned in Yazoo River Towing to Little J.O., and twenty-nine percent of the shares he owned in Yazoo River Towing to Lela and Patrick, to be' divided equally. When contrasted with the rest of the judgment’s language, it is apparent that the chancellor simply applied the wrong number to his 'calculations, and that his true intent was to-divide between Patrick and Lela twenty-nine percent of the shares of Yazoo River Towing owned by Big J.O. Such a calculation would have resulted in the following:
[[Image here]]
There is absolutely no language in the remainder of the chancellor’s judgment to support the finding that he interpreted codicil 3 to bequeath to Lela and Patrick twenty-nine percent of the outstanding shares in Yazoo River Towing. The fact that this single footnote uses the. number of outstanding shares, which is at odds with at least three other instances where the chancellor uses the number of shares owned by Big J.O., clearly denotes a mathematical error and not an intent on the chancellor’s part to allocate twenty-nine percent of 5,000 shares to Patrick and Lela.
¶ 28. Notwithstanding the chancellor’s error in calculation, he was correct in holding that codicil 3 is unambiguous. As stated, the majority maintains that the omission of “that I own” in the third bequest of codicil 3 gives'rise to two reasonable interpretations and thus constitutes á latent ambiguity; however, this is simply not the case:
An “ambiguous” word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the cus *1108 toms, practices, usages and terminology as generally understood in the particular trade or business.
Dalton v. Cellular S. Inc., 20 So.3d 1227, 1232 (¶ 10) (Miss.2009) (emphasis added). The context of codicil 3, in its entirety, evidences a clear intent by Big J.O. to devise percentages of shares that he owned in each of the three companies in all three of his bequests. In two of the three bequests, he expressly stated this intent. It would be illogical to find that because Big J.O. omitted “that I own” in the third bequest, he must have suddenly altered his desire from bequeathing shares that he owned to bequeathing total shares outstanding. Further, it would be inconsistent to conclude that Big J.O. intended to convey twenty-nine percent of the total shares outstanding in Yazoo River Towing to Patrick and Lela, when his previous statement expressly conveyed forty-one percent of the shares that he owned in Yazoo River Towing to Little J.O. The context of codicil 3 compels the conclusion that Big J.O. bequeathed to Patrick and Lela twenty-nine percent of the shares that he owned in Yazoo River Towing—not twenty-nine percent of the outstanding shares of Yazoo River Towing—because only a bequest of a percentage of the percentage of the shares that Big J.O. owned is consistent with all of the other bequests that he made in codicil 3. And while it is true that Big J.O. owned more than twenty-nine percent of the 5,000 shares of Yazoo River Towing, it would indeed be unusual terminology and usage for him to speak of bequeathing a percentage of the entire shares of Yazoo River Towing when he did not own all of the shares. Thus, when considering the entire context of codicil 3, there is no ambiguity, and it is evident that the chancellor merely applied the wrong numbers when making his calculations.
¶ 29. For the reasons stated, I dissent. I would affirm the chancellor’s judgment as modified to correct the chancellor’s apparent miscalculation.

. Note that the phrase “that I own" is missing here.